```
              IN THE UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF FLORIDA
                            MIAMI
                 CASE NO. 16-CR-20907-MGC-1
```

**UNITED STATES OF AMERICA**,
        Plaintiff
  vs.                      **June 21, 2017**

**SAMUEL BAPTISTE**,
        Defendant.

**SENTENCING HEARING**

BEFORE THE HONORABLE **MARCIA G. COOKE**,

UNITED STATES DISTRICT COURT JUDGE

**A P P E A R A N C E S**

FOR THE PLAINTIFF:    **MARC S. ANTON**, AUSA
UNITED STATES OF     United States Attorney's Office
AMERICA                500 East Broward Blvd, #700
                        Fort Lauderdale, FL 33394
                        (954) 660-5096
                        Marc.anton@usdoj.gov

FOR THE DEFENDANT:    **JOAQUIN E. PADILLA**, AFPD
SAMUEL BAPTISTE      Federal Public Defender's Office
                        150 W. Flagler, Suite 1700
                        Miami, FL 33130
                        (305) 530-7000
                        Joaquin_padilla@fd.org

REPORTED BY:          **GIZELLA BAAN-PROULX**, RPR, FCRR
                        United States Court Reporter
                        400 North Miami Avenue, Suite 8S32
                        Miami  FL  33128
                        (305) 523-5294
                        gizella_baan-proulx@flsd.uscourts.gov

**P R O C E E D I N G S**

*(The following proceedings were held in open court.)*

**THE COURTROOM DEPUTY:** Your Honor, we have our sentencing this afternoon on United States of America versus Samuel Baptiste, case number 16-20907.

**THE COURT:** For the record, appearing on behalf of the United States?

**GOVERNMENT:** Good afternoon, Your Honor. Marc Anton on behalf of the United States.

**THE COURT:** Appearing on behalf of Mr. Baptiste?

**DEFENSE:** Good afternoon, Judge. Joaquin Padilla from the Federal Defender's Office on behalf of Mr. Baptiste.

**THE COURT:** Spectators and probation may be seated. Today is the date and time, Mr. Padilla, set for your client to be sentenced in this matter.

Have you had an opportunity to read and review the presentence report, and is there anything in addition that you wish to the Court to add?

**DEFENSE:** Well, Judge, there is one thing, and I should -- I need to let the Court know about this. One of the things in -- and I don't any objections to the facts or the guidelines except for one thing, and that is Mr. Baptiste provided an acceptance statement, and that was taken out because of some conduct that the probation office became aware of during the course of the PSI process.

I just received the documents related to that conduct. I sent those documents to Mr. Baptiste. He's looking at them for the first time right now.

Now, I should say that these are things that he went -- he dealt with through the rural prisons, so these are not new to him, but he's looking at the documents here for the first time in terms of support, I guess, of probation, or the government's perhaps requested, to not give Mr. Baptiste an acceptance of responsibility based on what happened while he was at FDC here. So he's looking at those now.

You know, the only objection I have is about the acceptance in terms of the sentence in this case. We're prepared to come in before we go about this and ask what we believe would be the bottom of the guidelines which is 74 months.

**THE COURT:** Let me ask. Mr. Anton, are you asking the Court to deny this defendant acceptance of responsibility?

**GOVERNMENT:** Yes, Your Honor. I'd ask that you impose the sentence as proposed by the probation office pursuant to the guidelines.

**THE COURT:** Well, I mean, it's in the original probation report.

**GOVERNMENT:** Judge, when the PSI came out as amended, it indicated that this conduct had occurred and that he was not recommending acceptance of responsibility. That PSI came out

1 at least since July 14th, 2017.  So defense was on notice as of
2 June 14th, 2017, that acceptance was not going to be
3 recommended by probation in the instant matter.
4     **DEFENSE**:  And I'm not arguing that I didn't get notice
5 on that.  We knew about that.  I certainly talked to
6 Mr. Baptiste about that.  My point is that all the documents
7 supporting the government's position, I did not -- I only
8 received recently, and Mr. Baptiste doesn't have them at all.
9     **THE COURT**:  He's presently at a level 26.
10     **DEFENSE**:  Yes.
11     **GOVERNMENT**:  Yes, Your Honor.
12     **DEFENSE**:  Without acceptance.  That's the guideline of
13 110 -- it would be higher but the max is 120.  So it's
14 effectively 110 to 120 guideline range.
15     **THE COURT**:  And if you were to get acceptance, it
16 would be?
17     **DEFENSE**:  84 months to 105 months.  And again, our
18 position coming in, we were not going to ask for a variance nor
19 were we going to ask for a guideline sentence of 84 months.
20     Mr. Baptiste understands his criminal record.  He
21 understands what he did in this case.  And we believe that that
22 was a fair sentence based on his conduct in this case.
23     And, again, one of the things that I'll point out --
24 it's in the PSI.  It's not objected to, facts, by anyone in the
25 case.  But if you actually read the PSI through, in terms of

1 the facts of this case, you get a real sense of who's driving
2 the train here in terms of firearms in the case.
3          Mr. Noel wanted the guns to go to Haiti.  He's from
4 Haiti.  He mentioned that he had done this before.  Mr. Noel is
5 the co-defendant.  Mr. Noel is the one who told the
6 confidential source that he needed the 9-millimeter and then
7 the M13.  Mr. Noel is the one who planned to ship everything to
8 Haiti.  Mr. Noel is the one who paid the source ultimately for
9 the guns, you know, so -- and, again, I'm not saying those
10 things to diminish what Mr. Baptiste did, but, you know, when
11 the co-defendant gets 15 or 19 months -- I can't remember which
12 one -- and we're looking at something in the guidelines --
13          **THE COURT**:  Let me ask this question of the United
14 States.  Can someone have acceptance of responsibility in the
15 underlying criminal action, sincerely accepted it, and still
16 have misbehavior which is -- I know I'm saying this politely
17 misbehavior, but that's basically what it is while they're
18 detained?
19          **GOVERNMENT**:  Yes, Your Honor.
20          **THE COURT**:  Does that remove their ability to accept
21 responsibility for the offense to which they're charged?
22          **GOVERNMENT**:  It can, Your Honor.  And I would first
23 state that the defendant bears the burden to show that he is
24 entitled to acceptance of responsibility, and that's from
25 United States versus Lewis, 115 F.3d 1331 out of the 11th

```
 1  Circuit.
 2            And in the United States versus Pace case, which is
 3  17 F.3d 341 also from the 11th Circuit in 1994, they
 4  specifically state that the district court may consider
 5  subsequent criminal conduct that is unrelated to the offense of
 6  conviction in deciding whether to give acceptance for
 7  responsibility.
 8            And I can go a bit further in cite United States
 9  versus Arellano A-R-E-L-L-A-N-O, which is 291 F.3d 1032 out of
10  the 8th Circuit from 2002 which specifically held that a
11  defendant's behavior in jail while awaiting sentencing is a
12  relevant consideration for the acceptance or denial of
13  acceptance of responsibility.
14            They go on to state that the Court has repeatedly held
15  that a district court may use a defendant's post-plea conduct
16  even if unrelated to the offense and conviction to deny
17  acceptance of responsibility.  And indeed, the probability or
18  even perception of continued misconduct is enough to
19  foreclosure a reduction for acceptance of responsibility.
20            So these cases specifically state that a district
21  court may consider this subsequent conduct even though it's
22  unrelated to the underlying conduct with a plea where the
23  defendant initially accepts responsibility and can revoke
24  acceptance of responsibility deduction points because of
25  conduct that occurs while in custody pending sentencing.
```

So if the Courts have specifically authorized Your Honor, if you so choose, to deny acceptance of responsibility based on post-plea conduct while in custody.

And in this particular case, I would urge Your Honor to follow that guidance. In this particular case there were three violations. Quite honestly, two of them are somewhat minor.

We have got tampering with -- it's titled as tampering with the mail system or disrupting the monitoring of mail, but it has to do with three-way texting through cell phones and e-mails which was a very low-level violation of policy, as well as a second violation of policy dealing with the defendant's, I guess, desire to have something happen quicker than it would have, and he continually presses the duress alarm when he wants to go to the law library, even though there really was no true emergency.

But the third violation which is the most serious, and it is the violation of possessing a dangerous weapon. The defendant was caught with razor blades concealed within a book that was in his property. He went to a hearing, and he was found in violation.

So the fact that the defendant is now possessing razor blades concealed within his property in custody is very consistent with the defendant's conduct throughout, quite honestly, his entire life and entire criminal history.

01:48

01:48

01:49

01:49

01:49

If you go back as early as 2009, of course, as the PSI points out, he's got a conviction for the sale of marijuana, but he quickly escalates that to concealing a firearm and receives a year in jail.

In 2010, he gets convicted of attempted felony murder, armed robbery with a firearm, and possession of a firearm by a convicted felon.

He gets sentenced as a habitual offender and ultimately receives 3 and a half years in prison after a violation of his conditional release by possessing weapons.

In 2010 he also gets convicted of a strong-arm robbery and is sentenced to two years in prison.

And in this particular case, we're now here again because the defendant is possessing a firearm as a convicted felon, and he's at a gun range and helping his co-defendant smuggle guns out of the United States, and that's Mr. Noel.

Judge, as outlined in the complaint, this is an individual who praises Osama Bin Ladin and ISIS leaders. He disseminates extremist propaganda, encourages and approves of violent crimes and attacks against westerners. He praises attacks by Al Qaeda, and he promotes travel to Syria for violent Jihad.

Judge, the misbehaving in custody in this case is consistent with his entire criminal history, and we ask that you deny the acceptance of responsibility in this particular

case because not only does the Court indicate that -- the cases indicate that Your Honor has the discretion to do so.

Specifically in his plea agreement, the government initially recommended acceptance of responsibility but stated very clearly in paragraph 4 that if the defendant commits any misconduct after entering into the plea agreement, we would not be bound to recommend acceptance of responsibility.

And I would ask that you follow the recommendation of probation in this case and deny the defendant his acceptance of responsibility points.

**DEFENSE**: Judge, I just want to point out a couple of things. And again, I don't think that either Mr. Baptiste or I are trying to minimize anything here, but -- and I think the government's characterization of the three incidents is accurate but, you know, just going back to the book for one second, that wasn't even in his possession at the time.

He had checked the book out, within days of checking that book out, he gets sent to special housing unit, doesn't have his property, they have his property for 30 days when they discover the book with the razor blades. He doesn't even have it. It's not even in his possession.

And again, I'm not trying to minimize the dangerousness of having a razor blade in jail. I think we all sort of understand that. But we went to a hearing where he actually denied that he had put it there or even knew about it

```
01:51

01:52

01:52

01:52

01:53
```

1  when it was recovered.
2         The other thing I'll point out is that that incident,
3  according to the reports, happened February 4th, 2017, so that
4  was before he entered into his plea agreement in this case.
5         **THE COURT**:  The incident with the razor blade?
6         **DEFENSE**:  Yes.  So that was before he pled.  I think
7  he pled March 29th in this case.  That would also exclude the
8  March 21st date, which is the pressing the alarm button several
9  times.
10        So the only thing that occurred after he entered the
11 plea agreement occurred on April 27th of this year, and that
12 is, again, using the government's sort of words, this low-level
13 violation for allowing someone else to use his minutes to text
14 his -- to e-mail his girlfriend.
15        And by the way, the reason is it's messages between a
16 boyfriend and girlfriend.  They're not discussing criminal
17 acts.  This is a conversation between boyfriend and girlfriend.
18        So, you know, even -- I know the government mentioned
19 here late that this plea agreement thing was.  That would
20 exclude the most serious violation here.
21        So, you know, I think that if you read Mr. Baptiste's
22 statement that he provided to probation -- he may say some
23 things this afternoon as well -- he fully accepts
24 responsibility in this case.  He really did.
25        And when he decided to plead guilty after he held

```
         1  discovery, part of the problem that this case, for him, at
         2  least, sort of lingered a little bit, because he was in shoe
         3  [sic].  He didn't have access to discovery.  It took forever
         4  for him to be able to have access to the library to look at all
01:53    5  the disks and the date.  It took a little bit for him to sort
         6  of get through it.  And maybe you see that in his frustration
         7  in terms of trying to get access to the law library.
         8         But once he made the decision to plead, he's
         9  absolutely committed to pleading guilty, understands -- and
01:53   10  again, understands that he's going to get a long sentence
        11  whether it's my sentence, yours, or the government's.  He
        12  understands that.  So I would again --
        13         THE COURT:  Mr. Padilla, I think given the timeline in
        14  this case, that the most serious incident occurred prior to him
01:53   15  entering a guilty plea, prior to this statement where he
        16  accepts responsibility.  I am going to at least allow him to
        17  have the acceptance of responsibility that the Court can allow
        18  under the guidelines.
        19         I can't give him the third point.  That's up to the
01:54   20  United States.  Mr. Anton and I have a disagreement, which,
        21  respectfully he's allowed to have and not give him the third
        22  point.  I don't think there's anything wrong with that.
        23         But I'm going to allow him to have the two points that
        24  would normally come under paragraph 26, if I'm looking at the
01:54   25  presentence investigation report correctly, which would mean
```

that I believe he's now -- what was in a criminal history category 5 would remain, but he would now be --

**DEFENSE:** Level 24 with 92 to 115.

**THE COURT:** Why 29 and not 26?

**GOVERNMENT:** Can I interrupt just for one second? I know you mentioned that we have a disagreement, but I'm not necessarily sure we do. I think if Your Honor is inclined to give the two points for acceptance of responsibility, that I'd happily give the third point because he did plead guilty, and he did save the government the expense of going to trial.

So once Your Honor imposes the two points, the third point based on the fact that he pled guilty in this case necessarily trails along. At least that's what I've uncovered.

**THE COURT:** So would you say now to correct the report, what would the correct guideline to be, Mr. Anton?

**GOVERNMENT:** Judge, if you give him all three points, it looks likes he's a level 23 category 5 for a range 84 to 105.

**THE COURT:** All right. I will consider that the guideline range in this case. Mr. Padilla, would your client like to address the Court at this time?

**DEFENSE:** Yes, Judge.

**THE COURT:** Sir?

**THE DEFENDANT:** I just want to say that I have accepted full responsibility for my actions and my conduct that

```
                1   took place during the course of the case, meaning, what led to
                2   my arrest.
                3            And as far as some of the statements that the
                4   government, you know, has said pertaining to me, being the, I
        01:56   5   guess, nuisance all my life, or what not, as the individual has
                6   flaws, and I felt that prior to me coming in contact -- prior
                7   to the date that was -- that the incidents took place of the
                8   investigation, I felt that to a good extent that I was trying
                9   to live a good life.  And we all make mistakes.
        01:56   10           But I'm not arguing any of the underlying conduct of
                11  the case.  I'm not, you know, going to absolve myself of any
                12  blame.  I'm not going to absolve myself and paint myself to be
                13  a saint or what not.  But at the same time, looking at the
                14  sentencing guidelines and how the facts just present in a case
        01:57   15  throughout the complaint, throughout the indictment,
                16  throughout, you know, everything that's contained within the
                17  discovery, you know.  It paints me as a person who's involved
                18  -- I would say involved in criminal acts -- the degree could be
                19  disputable or not, but to impose a sentence of the guideline --
        01:58   20  right now it's, what?  83 to 105 months.
                21           And as the record states, like my counsel just stated,
                22  you know, and the federal authorities who are right there and
                23  the prosecutor, they say, you know, the incident takes place.
                24  Some person wants to purchase weapons.  Some person pays
        01:58   25  supposedly pays somebody to transport weapons, and I'm there.
```

At no point in time am I -- besides my illegal act of actually coming into possession or coming into contact with the firearm, it doesn't paint me to be the most culpable, you know, person within the case. Now I understand that.

The only reason and the greatest fact is that, you know, contributes to me getting a severe, I guess, punishment or what not would be the fact that my criminal history. But it's always at the discretion of the judge to serve the interest and justice. That's all. That's the only thing I have to say.

**THE COURT:** Thank you very much, sir. I'm pausing, counsel, because this is an interesting situation. And I say it's interesting, and I am about to say something that I know you already know, and that is Mr. Baptiste, he has a good mind. He is a smart person, but he is caught up in the criminal justice system in a very real way.

And I'm going to put what the co-defendant did and his behavior aside and to say that sometimes you just don't have the luxuries that other people have. And I consider it, and maybe it's my own vanity for the friends that I have that seem to be able to consume and eat every single calorie that crosses their plate but remain thin, and that's not me.

Your client doesn't have the luxury of engaging in the kind of conduct that he wants to engage in and not have the significant penalty that has to be paid. And the chance now is

for him to say "I want off of this criminal justice wheel."

I mean, one thing for him is he did complete high school, but he completed it while incarcerated.  I just think he has the mind to do better, and he just doesn't have to keep doing it this way.

It is the judgment for the defendant is hereby committed to the Bureau of Prisons for a term of 80 months as to count 4.

Upon release from imprisonment, the defendant's placed on supervised release for three years.

Within 72 hours of release, the defendant shall report in person to the probation office where he is released.

He shall abide by the standard conditions of supervised release and the special conditions as outlined in part G and pay the special assessment of $100.

Now that sentence has been imposed, does the defendant or his counsel object to the Court's findings of fact or the manner in which the sentence was pronounced?

**DEFENSE**:  No, Judge.

**THE COURT**:  Mr. Anton, are you objecting to a sentence slightly outside the advisory guideline range?

**GOVERNMENT**:  Yes, Your Honor.  In this particular case, I do not feel a downward departure is appropriate given the defendant's extended criminal history and conduct in the case.

 1 **THE COURT:** Your objection to the Court's sentencing
 2 him outside the advisory guideline range is noted, and the
 3 appellate rights that you have are preserved. Good luck to
 4 you, sir. Hopefully I never see you again.
 5 **GOVERNMENT:** Thank you, Judge. Have a good day.
 6 **THE COURT:** Thank you.

 9 (Thereupon, the above hearing was concluded.)

 11          \*         \*         \*

02:03

# C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.

09/20/2018

DATE COMPLETED        GIZELLA BAAN-PROULX, RPR, FCRR